268 Kan. 441 (2000)
996 P.2d 834
In the interest of L.A.M. and R.K.M., Children under 18 years of age.
No. 82,488.
Supreme Court of Kansas.
Opinion filed January 28, 2000.
LaDessa M. de la Cruz, of Delacruz & Doran, of Wichita, argued the cause, and Janice A. Doran, of the same firm, and Kathleen R. Reeves, of Wichita, were with her on the briefs for appellant Aguilar.
Jay G. Horvath, of Law Office of Jay G. Horvath, of Wichita, was on the brief for appellees Miguel.
Steven J. Ternes, of Legal Services of Wichita, of Wichita, was on the brief as guardian ad litem.
*442 The opinion of the court was delivered by
ABBOTT, J.:
Elsa Pardina Aguilar, the maternal aunt of L.A.M. and R.K.M., minors, appeals the trial court's order granting custody of L.A.M. and R.K.M. to their father's cousin, Saul J. Miguel, and his wife, Janet F. Miguel.
Rubicela and Nahum Miguel were the parents of L.A.M. and R.K.M. It appears Nahum murdered Rubicela and fled. Nahum's whereabouts remain unknown. R.K.M. witnessed the murder. The trial court severed Nahum's parental rights and that is not an issue on appeal. The trial court granted custody to the Miguels and ordered that a conservatorship and guardianship be commenced by the Miguels. This appeal followed.

I. CONSERVATORSHIP AND GUARDIANSHIP
K.S.A. 38-1584 reads in pertinent part:
"(a) Purpose of section. The purpose of this section is to provide stability in the life of a child who must be removed from the home of a parent, to acknowledge that time perception of a child differs from that of an adult and to make the ongoing physical, mental and emotional needs of the child the decisive consideration in proceedings under this section. The primary goal for all children whose parents' parental rights have been terminated is placement in a permanent family setting.
....
"(c) Actions by the court. (1) Custody for Adoption. When parental rights have been terminated and it appears that adoption is a viable alternative, the court shall enter one of the following orders:
(A) An order granting custody of the child, for adoption proceedings, to a reputable person of good moral character, the secretary or a corporation organized under the laws of the state of Kansas authorized to care for and surrender children for adoption as provided in K.S.A. 38-112 et seq. and amendments thereto. The person, secretary or corporation shall have authority to place the child in a family home, be a party to proceedings and give consent for the legal adoption of the child which shall be the only consent required to authorize the entry of an order or decree of adoption.
(B) An order granting custody of the child to proposed adoptive parents and consenting to the adoption of the child by the proposed adoptive parents.
(2) Custody for long-term foster care. When parental rights have been terminated and it does not appear that adoption is a viable alternative, the court shall enter an order granting custody of the child for foster care to a reputable person of good moral character, a youth residential facility, the secretary or a *443 corporation or association willing to receive the child, embracing in its objectives the purpose of caring for or obtaining homes for children.
(3) Preferences in custody for adoption or long-term foster care. In making an order under subsection (c)(1) or (2), the court shall give preference, to the extent that the court finds it is in the best interests of the child, first to granting such custody to a relative of the child and second to granting such custody to a person with whom the child has close emotional ties.
"(d) Guardian and conservator of child. The secretary shall be guardian and conservator of any child placed in the secretary's custody, subject to any prior conservatorship.
"(e) Reports and review of progress. After parental rights have been terminated and up to the time an adoption has been accomplished, the person or agency awarded custody of the child shall within 60 days submit a written plan for permanent placement which shall include measurable objectives and time schedules and shall thereafter not less frequently than each six months make a written report to the court stating the progress having been made toward finding an adoptive or long-term foster care placement for the child. Upon the receipt of each report the court shall review the contents thereof and determine whether or not a hearing should be held on the subject. In any case, the court shall notify all interested parties and hear evidence regarding progress toward finding an adoptive home or the acceptability of the long-term foster care plan within 18 months after parental rights have been terminated and every 12 months thereafter. If the court determines that inadequate progress is being made toward finding an adoptive placement or establishing an acceptable long-term foster care plan, the court may rescind its prior orders and make other orders regarding custody and adoption that are appropriate under the circumstances. Reports of a proposed adoptive placement need not contain the identity of the proposed adoptive parents.
"(f) Discharge upon adoption. When the adoption of a child has been accomplished, the court shall enter an order discharging the child from the court's jurisdiction in the pending proceedings."
Aguilar argues that only two options were available after the parental rights of Nahum were terminated, adoption or long-term foster care. She argues that K.S.A. 38-1584 does not permit a conservatorship and guardianship. She further argues that if the parental rights had not been terminated, a Chapter 38 guardianship would have been an option.
K.S.A. 59-3006 authorizes a court to appoint a guardian or conservator for "a minor." K.S.A. 59-3006(a)(2) and (b)(3). The statute does not place any restrictions on when a guardian or conservator can be appointed.
*444 We recognize Judge Jennifer Jones was attempting to do what she felt was best for the two children. Judge Jones clearly was of the opinion it would be in the children's best interests to remain in Wichita with their cousins. Ample evidence exists to support that concept.
If the children were sent to Mexico with the maternal aunt, they would be living with an aunt with whom they had minimal contact prior to their mother's death and with an uncle and cousins with whom they had no prior contact. They would attend a new school and be separated from their childhood friends. A sharp contrast to everything being new and different is the Wichita placement, where they are living with relatives they had visited several times a week and had stayed with overnight many times. They retain childhood friends, retain the same therapist who is helping them deal with the loss of their parents, and continue with their lives. They continue to be bilingual. In addition, the court retains jurisdiction and can change long-term foster care or allow the children to be adopted as the court finds is in the children's best interests.
Although the wording could have been more concise, we are convinced that Judge Jones granted the equivalent of long-term foster care by placing the children with Saul and Janet Miguel. The Kansas Department of Social and Rehabilitation Services (SRS) is not a party to this appeal and does not object to long-term custody being placed with the Miguels. We find no error on this issue.

II. ADOPTION
Although Judge Jones made a finding that adoption was not a viable alternative for the Miguels, Aguilar argues that the court should have considered adoption by her as a viable option and that the trial court was required to consider adoption by her and make findings pursuant to K.S.A. 38-1584(b).
K.S.A. 38-1584 does not require that the court make a finding as to the viability of adoption for every interested party. What is required is that the court make a general finding as to the viability of adoption for the children. In this case, Judge Jones determined that it would not be in the best interests of the children to be adopted at this time. Judge Jones further determined that it would *445 not be in the best interests of the children to live in Mexico away from their relatives in Wichita. This impliedly precluded adoption by Aguilar, who lives in Mexico. Judge Jones determined that in order to meet the needs of the children and to ensure that the children would be able to maintain contact with both their maternal and paternal relatives, adoption by any of the interested parties was not a viable option for the children.
Judge Jones correctly followed the requirements of K.S.A. 38-1584 and did not err in determining that adoption was not a viable option for the children.

III. PREFERENCE
Aguilar argues that the court erred when it failed to give her custody of L.A.M. and R.K.M. Aguilar asserts that the court should not have taken into account that the children would move to Mexico as a factor in determining the placement of the children.
We utilize an abuse of discretion standard when reviewing a trial court's determination of the custody of children. In re A.F., 13 Kan. App.2d 232, 234, 767 P.2d 846 (1989). The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. Hoffman v. Haug, 242 Kan. 867, 873, 752 P.2d 124 (1988). The party who asserts an abuse of discretion bears the burden of showing such abuse. Hagedorn v. Stormont-Vail Regional Med. Center, 238 Kan. 691, 695, 715 P.2d 2 (1986); DeWerff v. Schartz, 12 Kan. App.2d 553, 557, 751 P.2d 1047 (1988).
Aguilar argues that the court should not have based its decision to award custody of the children on the fact that, if Aguilar would have been given custody, the children would have moved to Mexico with her. Aguilar claims that she was denied custody of the children based solely on her nationality. Judge Jones stated:
"I believe that you [Aguilar] could and would provide for the children's needs, but based upon the testimony that I have heard the last several days I believe that it would be in the best interests of the children that they not be uprooted and moved to Mexico."
Judge Jones' decision is not based on the fact that the children would have moved to Mexico, but on the fact that it would be *446 against the children's best interests if they moved anywhere away from Wichita. Judge Jones stated:
"[A]ccording to Dr. Guhman[, a psychologist,] the most critical factor is for these children to be placed with family, people who have a relationship with said children, who have a connection to their past; who can help them know themselves and develop their own identity;
"said children's connection to their past has been primarily in Wichita with their paternal relatives and to change that at this time does not appear to be in their best interest;
"if said children were placed with their maternal aunt in Mexico, she and her immediate family would be the only relatives the children would have. Other maternal relatives reside in Mexico, but not in the immediate area and they only visit once a year, thus said children would not be developing any more of a relationship with those relatives than they would if they were placed with Janet and Saul Miguel."
The record reflects that the children had and continue to have significant family ties in Wichita and that, because of the tragic event which happened, it would be in the children's best interests to remain in Wichita. Judge Jones stated:
"To uproot them from what they know as their past at this particular time does not appear to be in their best interest, regardless of their resilience and their abilities to adapt to new environments."
Judge Jones' decision is supported by the record. The Miguels were the godparents to L.A.M. and saw Rubicela daily. Janet was bilingual and went with Rubicela and the children when they had medical or dental appointments. Janet assisted Rubicela with getting the children enrolled in school and purchasing school supplies. L.A.M. and R.K.M. forged a close bond with the Miguels' son. L.A.M and R.K.M. spent the night at the Miguels two or three nights every month.
L.A.M. and R.K.M. also have two first cousins who live in Wichita. The children have a close relationship with their cousins and regularly spend time with them. R.K.M.'s godmother lives in Garden City and often comes to Wichita to visit the children.
Aguilar is a resident of Cancun, Mexico. Aguilar's contact with the children prior to the death of their mother had been limited. L.A.M. and R.K.M. have never met Aguilar's husband and children.
*447 Sherry Worth, a licensed social worker, testified that the children should be placed with the Miguels. Dawn Befort, a social worker with SRS, detailed in her report to the court that placement with the Miguels would be the most appropriate option. Dr. Elizabeth Ann Guhman, a licensed psychologist, testified that the children needed a stable family unit and contact with blood relatives that would give the children some connection with their heritage. The effect of moving the children to Mexico was a legitimate concern of the district court, as was the effect of their remaining in Wichita. The trial court's objective was to determine the best interests of the children.
We cannot say that Judge Jones abused her discretion in determining that placement with the Miguels would be in the best interests of the children.
Affirmed.