(42 P.3d 215)
No. 87,302

In the Interest of J.A., a Child in Need of Care.

Opinion filed March 15, 2002.

*Deanna L. Lieber,* of Stevens & Brand, L.L.P., of Lawrence, for appellants W.H. and B.H.

*Larry D. Hendricks* and *Todd A. Luckman,* of Stumbo, Hanson & Hendricks, LLP, of Topeka, for appellees J.L. and D.L.

Before MARQUARDT, P.J., KNUDSON, J., and ROGG, S.J.

MARQUARDT, J.: W.H. and B.H. (the Hs) appeal the trial court's decision granting J.L. and D.L. (the Ls) temporary custody of and consent to adopt J.A. We reverse and remand with directions.

J.A. was born on December 16, 1998, to K.A., a mentally incompetent female. At the time of J.A.'s birth, K.A. was unable to identify the father. A petition was filed requesting that J.A. be adjudicated a child in need of care. The Kansas Department of Social and Rehabilitation Services (SRS) was granted temporary custody of J.A. On March 22, 1999, J.A. was adjudicated a child in need of care. J.A. was placed in the Hs' home when he was 6 weeks old, after another foster family could not handle J.A.'s persistent crying. J.A. thrived and was happy in the Hs' home for 2 years.

A paternity test revealed that the Ls' son is J.A.'s father. The Ls' son is mentally incompetent and unable to care for himself. The Ls' son notified the Ls of J.A.'s birth in January 1999. The Ls were granted visitation with J.A. in August 1999.

In August 1999, the State filed a motion to terminate the parental rights of K.A. and the Ls' son. The Hs and the Ls were granted interested party status in the case. In February 2000, the trial court terminated the parental rights of J.A.'s parents.

The trial court granted SRS the authority to consent to J.A.'s adoption. Adoption staffing meetings were held at Lutheran Social Services (LSS) to determine the appropriate placement for J.A. LSS selected Dr. Maureen Ruh, Psy.D., a licensed clinical psychologist, to evaluate J.A.'s attachment to the Ls and the Hs. Even though Dr. Ruh recommended that the Ls be allowed to adopt J.A., the LSS staff determined it was in J.A.'s best interests that

adoptive placement be with the Hs. The factors LSS considered were: (1) the Ls indicated that they would raise J.A. as their grandchild rather than their child; (2) J.A. was attached to both the Ls and the Hs; however, J.A. has stronger emotional ties with the Hs because he has been with them since he was 6 weeks old; (3) J.A. is well adjusted in his placement with the Hs and to move him could put him at high risk for attachment difficulties in the future; and (4) the Ls indicated that J.A.'s position in the family would be, in part, to carry on the family legacy, which raised concern about the motivation for adoption and the pressure this could put on J.A.

An evidentiary hearing was held in January 2001 on the Ls' motion to modify custody and to have J.A. placed in their home. The trial court determined that the Ls should be allowed to adopt J.A.

At the time of the hearing, W.H., the foster father of J.A., was a 45-year-old farmer who worked at a family farm implement dealership. W.H. had one biological daughter who was 24 years old and resided outside the home. W.H. testified that he had high blood pressure and diabetes but was in good health. B.H., the foster mother, was 34 years old, had two biological children, a 9-year-old daughter and a 14-year-old son, who resided in the home. She was a nurse and was scheduled to complete a social work degree in May 2001. B.H. identified her only health problem as being asthmatic. The Hs were married in 1986. They were foster parents to five children, including J.A. The Hs testified that the entire family wanted to adopt J.A.

At the time of the hearing, J.L., J.A.'s grandfather, was a 67-year-old monument dealer. J.L. was in good health but acknowledged that he had taken medication in the past for an enlarged prostate and had Type II diabetes. D.L., J.A.'s grandmother, was a 66-year-old homemaker. She testified that she was in good health but acknowledged she underwent a triple by-pass surgery 8 years ago and had asthma. The Ls were married in 1955. The Ls have five adult children, ranging in age from 41 to 37 years old, and four grandchildren in addition to J.A. D.L. indicated that J.A's biological father would be a part of J.A.'s life if the Ls were allowed to adopt him.

The trial court received the testimony and reports of experts who evaluated J.A. Dr. Joanne Lyon, Ph.D., a licensed psychologist, was hired by the Hs. Dr. Lyon testified that it is not good to remove a child from an environment in which he is thriving.

Dr. Ruh was hired by LSS to assess the emotional attachment between J.A. and the Hs and the Ls. Dr. Ruh concluded that the Ls should be allowed to adopt J.A.

The trial court heard testimony of members of the LSS adoption staff. Meridee Westjorde, an SRS social worker, believed it was in J.A.'s best interests that he be placed with the Hs. Lisa Haslett, a social worker, performed home visits in the Hs' and the Ls' homes. Haslett testified that she did not agree with Dr. Ruh's recommendations. Haslett testified that she did not see J.A.'s attachment to the Hs as being anxious and attributed any anxiety to the process, not to the relationship. Ruth Santner, a LSS supervisor, thought J.A. should be placed with the Ls. The guardian ad litem supported allowing the Hs to adopt J.A.

On March 30, 2001, the trial court found that both interested parties brought love, caring, and stability to J.A. The decision to grant the adoption to the Ls was based on the fact that the Ls were family and the Hs could not "bring blood."

The Hs filed a timely notice of appeal. The Hs also filed a motion requesting that SRS be given temporary custody of J.A. and that J.A. remain in the Hs' home pending the appeal. Prior to the docketing of the appeal, the Ls filed a motion to dismiss the appeal, alleging that the Hs did not comply with K.S.A. 38-1591(e), which required the notice of appeal to be verified. The trial court held that the failure to file a verified notice of appeal under K.S.A. 38-1591(e) was jurisdictional and the Hs' voluntary appearance in the proceedings constituted personal service under K.S.A. 38-1591(e). The trial court dismissed the appeal. The trial court also denied the Hs' oral motion to amend the notice of appeal, finding that more than 30 days had passed since the judgment became final. The Hs filed a motion to alter or amend the trial court's dismissal of their appeal, which was also denied.

The Hs filed a motion in this court, pursuant to Supreme Court Rule 5.051 (2001 Kan. Ct. R. Annot. 33), to have their appeal

reinstated. The Ls' opposed reinstatement of the appeal. The motion was granted on June 29, 2001.

## Trial Court Dismissal of the Appeal

The Hs contend that the trial court did not have jurisdiction to dismiss their appeal. Both sides recognize that there is no case law on this issue; thus, it is a matter of first impression.

Whether jurisdiction exists is a question of law over which this court has unlimited review. *Maggard v. State,* 27 Kan. App. 2d 1060, 1062, 11 P.3d 89, *rev. denied* 270 Kan. 899 (2000).

The Ls contend that this court does not have jurisdiction to hear the Hs' appeal because the notice of appeal did not contain a verification as required by K.S.A. 38-1591(e). The Ls did not cross-appeal; however, because this issue is jurisdictional, we will consider it.

"Every notice of appeal, docketing statement and brief shall be verified by the interested party *if the party has been personally served at any time during the proceedings.* Failure to have the required verification shall result in the dismissal of the appeal." (Emphasis added.) K.S.A. 38-1591(e).

Rule 5.051 states in relevant part as follows:

"The district court shall have jurisdiction to dismiss an appeal where the appellant has filed the notice of appeal in the district court but has failed to docket the appeal with the clerk of the appellate courts. Failure to docket the appeal in compliance with Rule 2.04 shall be deemed to be an abandonment of the appeal and the district court shall enter an order dismissing the appeal. The order of dismissal shall be final unless the appeal is reinstated by the appellate court having jurisdiction of the appeal for good cause shown on application of the appellant made within thirty (30) days after the order of dismissal was entered by the district court."

The Hs contend that Rule 5.051 only provides the trial court with jurisdiction to dismiss an appeal when a docketing statement has not been timely filed and does not grant jurisdiction for the trial court to dismiss an appeal for any other reason. They contend that the most appropriate method for challenging an unverified notice of appeal is by a motion to the appellate court after the appeal has been docketed.

The Ls rely upon *Carson v. Eberth*, 3 Kan. App. 2d 183, 592 P.2d 113 (1979), to support their argument. In *Carson*, this court recognized that the trial court has the authority to dismiss the appeal until the appeal is docketed. However, *Carson* held that the trial court's authority is limited to those cases where the appeal is not timely docketed. 3 Kan. App. 2d at 185. Neither K.S.A. 38-1591(e) nor Rule 5.051 gives the trial court express authority to dismiss an appeal for failure to file a verified notice.

A finding that the trial court did not have jurisdiction, however, would appear to conflict with established case law recognizing that the trial court retains jurisdiction until an appeal is docketed. See *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992); *Hundley v. Pfuetze*, 18 Kan. App. 2d 755, 858 P.2d 1244, *rev. denied* 253 Kan. 858 (1993). In *Honeycutt* and *Hundley*, the issue was whether the trial court had the authority to address post-trial motions after the filing of a notice of appeal.

We hold that the trial court's limited authority under Rule 5.051 allows it to dismiss an appeal only when a docketing statement has not been filed.

### Verification of the Notice of Appeal

Even though we found that the trial court did not have jurisdiction to dismiss the appeal, there is still a question whether the lack of verification of the notice of appeal deprives this court of jurisdiction.

The Hs assert that they are not required to file a verified notice because they were not "personally served" as required under K.S.A. 38-1591(e). The trial court found that the Hs had been personally served because they appeared voluntarily at proceedings. "Personal service shall be made by delivering or offering to deliver a copy of the process and accompanying documents to the person to be served." K.S.A. 2001 Supp. 60-303(d). "An acknowledgment of service on the summons is equivalent to service. The voluntary appearance by a defendant is equivalent to service as of the date of appearance." K.S.A. 2001 Supp. 60-303(e).

The Hs contend that K.S.A. 2001 Supp. 60-303(e) does not apply to them because K.S.A. 38-1534(a) provides its own definition for

personal service as used in the Kansas Code for Care of Children (KCCC), K.S.A. 38-1501 *et seq.* Unlike K.S.A. 2001 Supp. 60-303(e), the language of K.S.A. 38-1534 does not contain a provision which recognizes an appearance by a party as being the equivalent of service. The Hs rely upon the proposition that when a general statute and more specific statute conflict, the more specific statute prevails unless it appears the legislature intended to make the general statute controlling. See *State v. Smith*, 268 Kan. 222, 231, 993 P.2d 1213 (1999); *Tongish v. Thomas*, 251 Kan. 728, 731, 840 P.2d 471 (1992).

Conversely, the Ls contend that K.S.A. 2001 Supp. 60-303(e) is applicable because the KCCC refers to Chapter 60 when the KCCC is silent on an issue of procedure. The Ls cite no authority for this assertion.

Also, the Hs contend that K.S.A. 2001 Supp. 60-303(e) does not apply because under that statute, the voluntary appearance by a "defendant" is required. The Hs are interested parties, not defendants. K.S.A. 60-301 requires the clerk of the court to issue a summons for service upon each defendant. However, under K.S.A. 38-1533, a summons and copy of the petition need only be served upon the child by serving the guardian ad litem, the parent(s) who have legal custody or who may be ordered to provide child support, the person with whom the child is residing, and any other person designated by the county or district attorney.

The Hs also claim that they have not been "personally served" because K.S.A. 2001 Supp. 60-303(e) only equates a voluntary appearance with service and does not equate a voluntary appearance with "personal service." Under K.S.A. 2001 Supp. 60-303(d) and K.S.A. 38-1534(a), personal service requires that a copy of the process be delivered to the person.

The minutes of the March 22, 2000, Senate Judiciary Committee meeting on Sub. S.B. 633 indicate that K.S.A. 38-1591(e) was designed to alleviate the problem of attorneys who were bound to proceed with appeals in termination cases even if the parent was disinterested or could not be located. It required the parent(s) to "acknowledge their wish to continue appeal at every level of appeal

or the appeal shall be dismissed." Senate Judiciary Committee, March 22, 2000.

We find that K.S.A. 38-1591(e) does not require verification of the notice of appeal when a party is not personally served with process. This appeal is appropriately before this court for review.

## Abuse of Discretion

The Hs contend that the trial court abused its discretion by narrowly focusing on the Ls' biological connection to J.A. without considering other factors to determine J.A.'s best interests.

In an adoption case, after parental rights have been terminated, the court must consider all the facts and circumstances to determine what custody placement is in the child's best interests based upon the child's ongoing physical, mental, and emotional needs. In *In re R.P.*, 12 Kan. App. 2d 503, 505, 749 P.2d 49, *rev. denied* 243 Kan. 779 (1988), this court stated: "In [K.S.A.] 38-1584(c)(3), the legislature has expressed the policy that preference for adoption should be given to a relative of the child. This policy, however, must be balanced with the policy 'to make the ongoing physical, mental and emotional needs of the child the decisive consideration.' "

A trial court's determination of the custody of children is reviewed for abuse of discretion. *In re L.A.M.*, 268 Kan. 441, 445, 996 P.2d 834 (2000). In the absence of such abuse, the trial court's decision will not be disturbed on appeal. *In re A.F.*, 13 Kan. App. 2d 232, 234, 767 P.2d 846 (1989). Discretion is abused when no reasonable person would take the view adopted by the trial court. *In re Marriage of Whipp*, 265 Kan. 500, 508, 962 P.2d 1058 (1998). The party asserting abuse of discretion bears the burden of showing such abuse. *In re L.A.M.*, 268 Kan. at 445.

K.S.A. 38-1584 states:

"(a) The purpose of this section is to provide stability in the life of a child who must be removed from the home of a parent, to acknowledge that time perception of a child differs from that of an adult and to make the ongoing physical, mental and emotional needs of the child the decisive consideration in proceedings under this section. The primary goal for all children whose parents' parental rights have been terminated is placement in a permanent family setting.

"(b)(1) When parental rights have been terminated and it appears that adoption is a viable alternative, the court shall enter one of the following orders:

. . . .

(4) In making an order under (b)(1) . . . , the court shall give preference, to the extent that the court finds it is in the best interests of the child, first to granting such custody to a relative of the child and second to granting such custody to a person with whom the child has close emotional ties."

The trial court applied the preference set forth in K.S.A. 38-1584(b)(4) and stated:

"The legislature recognized the power of family by setting a preference for a relative over others when in the child's best interest. However, blood alone does not insure a child's best interest.

"In this case the respondent is indeed fortunate to have two viable placements for permanence when so many children go wanting for any permanent placement.

"The Court finds that the [Ls] bring more to the equation then [*sic*] just blood. They bring love, caring, stability and family. The [Hs] are wonderful foster parents and are to be lauded for their service. They bring love, caring and stability. They can not however bring blood."

Even though the trial court's decision alludes to the best interest of the child, it appears that it only looked at the preference for a relative and completely ignored all the other important facts in this case. The trial court did not list any facts on which it relied for its decision, other than "blood." It is hard to believe that the trial court could have decided that the Ls were the appropriate adoptive parents when the histories of the two families show marked differences in the results of their parenting.

LSS had worked with J.A., the Ls, and the Hs from the beginning and took into consideration all of the professional opinions to support their preference that the Hs be allowed to adopt J.A. They focused on the strengths and needs related to parenting.

When discussing J.A.'s adoption, the Ls acknowledged that they are older than parents generally are for such a young child. The Ls' two daughters testified that in the event something happened to the Ls, they would raise J.A. There is nothing in the record on appeal to indicate that a family assessment was done on the Ls' daughters to determine whether they would be appropriate persons to raise J.A.

In contrast, the LSS family assessment of the Hs stated:

"This family has many strengths and much to offer a child in need of a family. They are involved and connected to one another. There is a good deal of love and respect in the home. The parents have a strong and stable marriage and are invested in their children. Family members have fun together, and all are very interested in adopting. They also have a strong and available network of extended family and enjoy being with them. There is no reported history of sexual, physical or emotional abuse or neglect in the nuclear or extended family. There is not reported history of substance abuse on the part of any family members."

The Hs also contend that because the factors to be used in determining what custody placement is in a child's best interests are not clearly set forth in the KCCC, this court should look to K.S.A. 2001 Supp. 60-1610(a)(3)(B), which sets forth factors to be considered in determining child custody or residency in divorce proceedings. Although K.S.A. 2001 Supp. 60-1610(a)(3)(B) provides some guidance as to what is in a child's best interests, a number of the factors would not apply to a determination under the KCCC. Thus, rather than apply factors from a statute that deal with custody between two parents, we believe the more sound approach is for a court to consider all of the facts. In an adoption case after parental rights have been terminated, the court must determine what custody placement is in the child's best interests for the child's ongoing physical, mental, and emotional needs. See K.S.A. 38-1584(a).

The primary goal for all children whose parents' parental rights have been terminated is placement in a permanent family setting. K.S.A. 38-1584(a). We hold that the trial court's consideration of what custody placement is in J.A.'s best interests, should include the following:

1. The child's attachment to the parties;
2. whether there has been any history of sexual, physical, emotional, or substance abuse on the part of any family member;
3. age and health of the parties;
4. whether the child would have siblings close to his age;
5. motivation of the parties for wanting to adopt;
6. potential permanence of the relationship between the child and adopting parents;
7. emotional needs of the child;
8. parenting skills, strengths, and weaknesses; and

9. special needs of the child.

The Hs assert the Ls' testimony that the natural parents' desire to have the Ls adopt J.A. is self-serving and reflects unsupported statements made by J.A.'s mentally incompetent parents. The parental rights of J.A.'s natural parents were terminated. After a biological parent's rights have been terminated, that parent's preference for who should adopt the child should not be considered.

Thus, after reviewing the trial court's decision, we find that it is impossible to determine the reasoning for its decision. The trial court did not articulate facts sufficient to support its position and, therefore, we find an abuse of discretion. The case is hereby reversed and remanded to the trial court for another hearing. We think that the better practice in sending it back to the trial court is for another judge to hear the case and make the necessary findings.

Reversed and remanded for a new hearing before another judge.