(146 P.3d 229)
No. 95,671

IN THE INTEREST OF M.R. (d.o.b. 09/03/00), AND J.R. (d.o.b. 10/10/02), MINOR CHILDREN UNDER EIGHTEEN YEARS OF AGE.

Opinion filed November 9, 2006.

Michael E. Lazzo, of Wichita, for appellants.

Richard A. Macias, of Wichita, for appellees.

E. Jolene Rooney, of Wichita, for Kansas Department of Social and Rehabilitation Services.

Before RULON, C.J., GREENE and HILL, JJ.

GREENE, J.: M.S. and D.S., aunt and uncle to M.R., d.o.b. 9/3/00, and J.R., d.o.b. 10/10/02, appeal the district court's decision reversing the decision of the Kansas Department of Social and Rehabilitation Services (SRS) to place these children with them for adoption, and ordering that the children remain with the children's foster parents, L.S. and S.L.S. We affirm the district court.

*Factual and Procedural Background*

M.R. and J.R. were placed in protective custody of SRS in June 2003. The children were placed in L.S. and S.L.S.'s foster home on July 16, 2003. On May 19, 2004, parental rights of the children's mother and father were terminated. The maternal aunt and uncle of the children were "granted interested party status" related to a permanent placement for M.R. and J.R., but the children remained in the custody of foster parents L.S. and S.L.S.

Upon administrative review on November 2, 2004, it was noted that the Kansas Children's Service League (KCSL), a contracting agency with SRS for purposes of selecting appropriate adoptive resources, was "deciding between relatives and foster parents. Dr. Hawthorne [a licensed psychologist] says either would be good but the children are more bonded with the foster parents." Ultimately, the staffing team decided that "both families were great ones and offer many things to the children but chose blood over bond." On February 25, 2005, SRS gave notice required under K.S.A. 38-1566(a) of intent to remove the children from the foster parents,

but the foster parents requested a "best-interest" hearing under that statute. On March 10, 2005, the aunt and uncle requested a "reasonable efforts" hearing pursuant to K.S.A. 38-1584(d).

After a hearing to address both motions, the court found that the foster parents had met their burden of proof that a change in placement was not in the best interests of the children. The court also found

"that the decision of KCSL to remove the children from the Foster Parents to the Relatives was decided on an abstraction rather than upon the actual best interests of the children. Accordingly, the decision failed to demonstrate reasonable efforts. The decision to remove the children is hereby set aside and the children shall remain with the Foster Parents."

The aunt and uncle appeal.

*Standard of Review*

When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, an appellate court's duty extends only to a search of the record to determine whether substantial competent evidence exists to support the trial court's findings. An appellate court does not weigh the evidence or pass upon the credibility of the witness and must review the evidence in the light most favorable to the party prevailing below. *In re Adoption of R.W.B.*, 27 Kan. App. 2d 549, 550, 7 P.3d 306, *rev. denied* 270 Kan. 898 (2000).

We review the ultimate determination of the custody of children, however, for an abuse of discretion. Discretion is abused when no reasonable person would take the view adopted by the trial court. The party asserting abuse of discretion bears the burden of showing such abuse. *In re J.A.*, 30 Kan. App. 2d 416, 423, 42 P.3d 215, *rev. denied* 274 Kan. 1112 (2002).

*Did the District Court Abuse Its Discretion in Finding that the Best Interest of the Children Dictated No Change in Placement?*

K.S.A. 38-1566(a) provides that if a child has been in a foster home for 6 months or longer and the Secretary of SRS plans to move the child to a different placement, parties notified under the statute may request a hearing before a district court having juris-

diction "to determine whether or not the change in placement is in the best interests of the child concerned."

In *In re J.A.*, 30 Kan. App. 2d at 425-26, this court held that in determining whether a custody placement is in the child's best interests, the court should consider:

"1. The child's attachment to the parties;

"2. whether there has been any history of sexual, physical, emotional, or substance abuse on the part of any family member;

"3. age and health of the parties;

"4. whether the child would have siblings close to his age;

"5. motivation of the parties for wanting to adopt;

"6. potential permanence of the relationship between the child and adopting parents;

"7. emotional needs of the child;

"8. parenting skills, strengths, and weaknesses; and

"9. special needs of the child."

At the time of the hearing on the parties' competing motions, the children had been with the foster parents for approximately 21 months (July 2003 to April 2005); M.R. was 4 years of age and J.R. was 2½ years of age. Both children referred to the foster parents as "mom" and "dad." The court heard testimony over several days, including that of Dr. Janet Hawthorne, a licensed psychologist, noting that the children were more bonded to the foster parents at the time of her evaluation. With regard to the potential to bond with the aunt and uncle, she noted that "with any transition like that, there would be some difficulty. The children are bonded to the [foster parents]; I do believe that that could be worked through."

Additionally, the psychologist testified:

"[J.R.] views the [foster parents] as her parents. She really doesn't have any attachment to her biological mother due to her age and being removed from the home, so she's unlikely to show issues related to being moved from the home where she's attached to a home, where she's learning I assume at this point, these people, getting to know them, forming bonds. So I would see acting out behavior [should the children be moved]—I would see that it would be traumatic for her."

Melissa Atkinson, an SRS social worker, testified that the foster parents had never lapsed in their decision to adopt the children and had always provided a good home for the children. Cathy Du-

gan, a KCSL social worker, testified that the children had a bond with the foster parents and that they provided a good home for the children. Amy Meek, a licensed clinical marriage and family therapist, testified that the disruption of the bond between the foster parents and the children would not be in the children's best interest and would subject the children to attachment difficulties, trust issues, elevated risks of acting out, and problems with lying, anger management, and hyper-vigilance.

The district court struggled with its decision, but focused its best interest analysis on the trauma and risk of changing placement of the children after 21 months with the foster parents.

"To this court, in terms of best interests of the children, the benefits of placement with the relatives are hypothetical. And seein' these relatives, I don't have any doubt that they could do as good a job as possible but there would still be—there's the hypothetical benefit. There is the—there is, by both Dr. Hawthorne and Dr. Meek, there's going to be trauma. This trauma is not going to be hypothetical, it is going to be absolutely real; and, with that trauma, there comes a risk.

"So in analyzing the best interests of the children, the Court feels that the trauma and the risk, if we remove these children, is going to be real unmistakable, clear and convincing that's going to be there; the benefits are going to be hypothetical.

"For that reason, the Court finds that the petitioner has sustained its burden of showing by the preponderance of the evidence."

We conclude that the district court's findings regarding the best interests of the children are supported by substantial competent evidence and that the court's conclusion regarding no change in placement was not an abuse of discretion.

*Did the District Court Abuse Its Discretion in Finding that the Agency Did Not Make Reasonable Efforts?*

At the outset, we question the propriety of the aunt and uncle's motion under K.S.A. 38-1584(d) within the framework of a proceeding initiated by SRS through notice under K.S.A. 38-1566. Contrary to its apparent decision to invoke the procedure outlined by 38-1566, SRS argued in district court and on appeal that the standards and procedure under that statute were inapplicable in the absence of a finding of no reasonable efforts by the agency under 38-1584. Clearly, there is some tension between the "best

interests" standards of 38-1566 and the "reasonable efforts" standard of 38-1584(d), but we need not determine the technical propriety of a 38-1584 motion within a 38-1566 proceeding because (i) neither party challenged the other party's motion on procedural grounds, (ii) the district court apparently treated both motions as properly before it, and (iii) most importantly—the court ultimately made the findings required under both statutory frameworks.

In challenging the court's finding that the agency failed to demonstrate reasonable efforts, the aunt and uncle argue that the district court ignored uncontroverted evidence that SRS "had diligently compared and evaluated these families, and had reviewed an abundance of criteria, comparisons, data, testimony and test results in reaching its decision." Indeed, the record supports the notion that there was considerable "effort" by SRS in reaching its determination in what it considered "one of the hardest cases ever." We note, however, that the district court was apparently troubled by a perception that, because this was a close case, SRS resolved the issue with an "abstract" rule that "blood" should control.

"It appears to me from the evidence that the consensus was that it was a dead tie and that the principle of blood decided it. The evidence does not convince me that sufficient attention was paid to it—the actual evidence of the blood. In other words, Ms. Dugan did testify that there's some benefits to being with the former, but it was a generalization upon which she based her generalization.

"I rather suspect that if the staffing was like I am, we've got to decide this. How do we do it? I don't know. Well, blood. Let's get on with it. Maybe they did better than that, but the presentation of the evidence leads to an inference that they finally decided it upon an abstraction rather than upon the actual best interests of the children."

We understand the court to say that "reasonable efforts" by the agency in finding placement are undermined by any arbitrary or abstract preference for "blood." We agree. In this regard the district court acted consistent with this court's opinion in *In re J.A.*, where this court reversed a district court's decision under K.S.A. 38-1584 because "it only looked at the preference for a relative and completely ignored all the other important facts in this case." 30 Kan. App. 2d at 424. In construing K.S.A. 38-1584, this court

has noted that the purpose of the statute is to provide stability in the life of the child and that the decisive consideration should be the ongoing physical, mental, and emotional needs of the child. "In light of this purpose, a reasonable permanent placement decision necessarily implies a decision that is in the best interests of the child under the circumstances." *In re D.C.*, 32 Kan. App. 2d 962, 966, 92 P.3d 1138 (2004).

We cannot conclude that the district court abused its discretion in finding that the agency's decision was overly influenced, if not controlled, by an abstract or arbitrary preference for "blood," and this finding supported the court's conclusion regarding a lack of reasonable effort.

Although K.S.A. 38-1584(b)(4) sets forth a preference first to relatives and second to persons with whom the child has close emotional ties, these statutory preferences are to be observed only "to the extent that the court finds it is in the best interests of the child." Indeed, we have consistently held that "a district court's discretion in effecting a child custody or placement determination is subject to the child's best interests." *In re D.C.*, 32 Kan. App. 2d at 972. The statutory preferences "must be balanced with the policy 'to make the ongoing physical, mental and emotional needs of the child the decisive consideration.' " *In re J.A.*, 30 Kan. App. 2d at 423. The Kansas Code for Care of Children is to be liberally construed to provide children with the care, custody, guidance, control, and discipline that will best serve the welfare of the child and the interests of Kansas. K.S.A. 38-1501. This finding is neither contrary to the applicable statutes, nor an abuse of discretion.

We conclude that the district court's findings are supported by substantial competent evidence, that the court correctly applied statutory dictates, and that there was no abuse of discretion in the court's conclusion.

Affirmed.