741 P.2d 1386 (1985)
In the Matter of the ADOPTION OF D.M.J., a minor child.
Parker Jr. JOHNSON, Appellant,
v.
Trina Dea HOWARD and William King Howard, Appellees.
No. 59960.
Supreme Court of Oklahoma.
November 12, 1985.
As Corrected November 18 and November 27, 1985.
Rehearing Denied September 16, 1987.
Edward L. Munson, Tahlequah, for appellant.
Monte W. Strout and Kathy Carter-White, Tahlequah, for appellees.
Tina Jordan, Tahlequah, for intervenor Cherokee Nation.
Susan Work Haney and Sue Wycoff, Okl. Indian Legal Services, Oklahoma City, for amicus curiae Okl. Indian Child Welfare Ass'n.
*1387 SUMMERS, Justice.
D.M.J. is a ten year old, half-Indian girl whose custody was awarded to her non-Indian mother in the 1976 divorce of her parents. In 1982 with the consent of the natural mother, an adoption was arranged with a married couple, appellees, who also happened to be non-Indian.[1] With the Petition for Adoption was filed an Application For Adoption Without Consent of Natural Father. Appellant/natural father/full blood Cherokee Indian appeared in opposition at the hearing, as did the Cherokee Nation of Oklahoma, intervenor. The trial court on February 24, 1983 determined that appellant, who had not had custody since the 1976 divorce, had wilfully failed to support his daughter for more than one year preceding commencement of the adoption, that his consent was therefore not required under 10 O.S. 1981 § 60.7, and that his parental rights should be terminated.
Although the adoption proceeded in due course with a final Decree of Adoption on July 11, 1983, it is from the order of February 24, 1983, that the father appeals. He is joined on appeal by Intervenor/Cherokee Nation and by the Oklahoma Indian Child Welfare Association, amicus curiae. We are asked to invalidate the proceedings of February 24 for the alleged failure of the trial court to comply with the Indian Child Welfare Act[2] (I.C.W.A. or Act) and the Oklahoma Indian Child Welfare Act[3] in this proceeding. Further, the Cherokee Nation complains of lack of notice to the tribe.
It is urged in behalf of appellant that the evidence offered in support of termination fell short of what is required under the I.C.W.A. Appellees contend that the I.C.W.A. simply doesn't apply to the placement (or adoption) of the child in this case. To resolve the question we must examine the Act in order to determine the purpose for its enactment.

PURPOSE OF THE INDIAN CHILD WELFARE ACT AND OKLAHOMA INDIAN CHILD WELFARE ACT
The Indian Child Welfare Act and Oklahoma Indian Child Welfare Act are structured around the concern "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies" and placed in non-Indian homes and institutions.[4] *1388 Congress has declared the policy of this Nation in passing the ICWA as follows:
"... [T]o protect the best interest of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture...."[5]
In adoption cases, the Act, where applicable, gives preferences for placement of the child with (1) a member of the child's extended family, (2) other members of the Tribe, or (3) other Indian families.[6] The central thrust and concern of the ICWA is, therefore, "the establishment of minimum federal standards for the removal of Indian children from their families".
Numerous provisions of the Act support this conclusion.
Section 1912 addresses pending court proceedings. Subsection (d) requires:
"Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (emphasis added).
Subsection (e) declares:
"No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (emphasis added).
Subsection (f) states:
"No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (emphasis added).
The Indian Child Welfare Act comes into play therefore, when we are confronted with the removal of Indian children from Indian families. The purpose of the Act is to promote the best interest of Indian children through promoting the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families.
Oklahoma also has an Indian Child Welfare Act (OICWA).[7] The stated purpose of its Act is the "clarification of state policies and procedures regarding the implementation by the State of Oklahoma of the Federal Indian Child Welfare Act" and to "cooperate fully with Indian tribes in Oklahoma in order to insure that the intent and provisions of the Federal Indian Child Welfare Act are enforced".[8] The Oklahoma Indian Child Welfare Act applies when the ICWA is applicable.[9]
Appellant correctly points out that at the hearing there was no evidence of "remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" as required by § 1912(d), nor was there testimony of "qualified expert witnesses that the continued custody of the ... Indian custodian" would be detrimental, as required by § 1912(f).
But appellees counter that as far as D.M. is concerned, the family has been broken up since 1976. Once the family breakup *1389 has occurred, preventive measures are logically impossible and "remedial services" cannot repair a relationship after seven years of divorce. They agree that expert testimony is required where "continued custody" of the Indian parent is at issue, but urge that the statute has no application when the child is and has been in the custody of a non-Indian parent, such as in this case.
We must agree with the appellees/adoptive parents. The ICWA by its terms does not apply to "an award, in a divorce proceeding, of custody to one of the parents."[10] Neither does the Act anywhere suggest that it applies to a post-divorce situation, as here, in the absence of an attempt to "break-up the Indian family" or interrupt the "continued custody" of the child by the Indian parent. The Congress appreciated, as do we, the culture-shock and underlying trauma in yanking a child from an Indian environment and placing the child in a non-Indian one. In like manner, it provided no mandate that a child such as D.M. be uprooted from a non-Indian environment and placed in an Indian one. Thus there is no expression of intent in the ICWA to find her an Indian home. The Act not being applicable the trial court committed no error in terminating appellant's parental rights.

NOTICE TO THE CHEROKEE NATION
The Cherokee Nation complains that the tribe received insufficient notice of the hearing.[11] The Act requires notice by registered mail with return receipt. It must identify the pending proceedings and advise of the tribe's right to intervene. Assuming, but without so deciding, that the Nation was entitled to receive notice in this case, such notice was clearly sufficient. The notice to the Principal Chief of the Cherokee Nation satisfied all statutory requirements except one: it was sent by first class mail. The tribe did in fact intervene. It appeared at the hearing by counsel and participated fully. No objection to the notice was made to the trial court. No prejudice has been suggested by its having been served by first class mail. A party who appears and participates in a hearing will not be heard on appeal to complain for the first time regarding the sufficiency of notice.[12]

CONCLUSION
The underlying purpose that is evident throughout the Indian Child Welfare Act is the Act's concern with the removal of Indian children from an existing Indian family situation and the resultant breakup of the Indian family.
We therefore conclude that the ICWA applies only in those situations where Indian children are being removed from existing Indian family environments. Under the facts of this case where the Indian child since 1976 has been in the custody of her non-Indian mother, where the child is not being removed from the custody of an Indian parent, and is not being removed from an Indian environment, the ICWA does not apply.
We further conclude that the Cherokee Nation by appearing and participating in the hearing waived the statutory requirement of notice by certified mail.
ORDER OF TRIAL COURT AFFIRMED.
SIMMS, C.J., DOOLIN, V.C.J., and HARGRAVE and ALMA WILSON, JJ., concur.
HODGES, LAVENDER, OPALA and KAUGER, JJ., dissent.
HODGES, Justice, dissenting.
The dispositive issue on appeal revolves around the Indian Child Welfare Act, 25 *1390 U.S.C. § 1901 et seq. (I.C.W.A. or federal act) and the Oklahoma Indian Child Welfare Act, 10 O.S.Supp. 1984 § 40 et seq. (O.I.C.W.A. or state Act) (collectively Acts). The issue is: Should the Acts apply to the hearing on the eligibility of D.M.J., an alleged Indian child, for adoption without the consent of appellant Parker Jr. Johnson, a divorced, noncustodial, Indian natural father. The majority's decision places the adoption hearing outside the coverage of the Acts. I cannot accept the Court's conclusion that the Acts do not apply. Accordingly, I dissent.
Two threshold determinations are required to invoke the provisions of the Acts. First, the proceeding in question must be a "child custody proceeding" as defined by the federal Act. Second, it must be determined that the child is an "Indian child." Matter of Appeal in Maricopa County, 136 Ariz. 528, 667 P.2d 228, 231 (Ct.App. 1983).
There is no question that D.M.J. is an "Indian child" within the meaning of the Acts. Her father is a full blood Cherokee Indian and a member of the Cherokee Nation. Also, the Acts specifically define adoption cases as a "child custody proceeding." See 25 U.S.C. § 1903(1)(iv).
The majority holds the Acts do not apply in this case because the Indian child is in the custody of a non-Indian; therefore, there is no removal from an existing Indian family environment nor a resultant breakup of an Indian family. This interpretation completely thwarts the intent of the Acts.
The congressional policy of the I.C.W.A. as set forth in 25 U.S.C. § 1902 is to protect the best interests of Indian children; to promote stability and security of Indian tribes and families; to establish minimum federal standards for the removal and placement of Indian children; and to provide assistance to tribes in the operation of child and family services. The I.C.W.A. was enacted as a result of evidentiary findings that Indian children were being removed from their families much more so than non-Indian children. It was determined that such high percentage of removal was due to absence of involvement of Indian tribes in the welfare and judicial system and the absence of understanding of Indian family life and culture by those persons administering that system.
The Acts expressly except the application of their protective provisions in custody disputes arising in divorce proceedings under 25 U.S.C. 1903(1) and 10 O.S.Supp. 1984 § 40.3(A). In my opinion the specific exceptions to the Acts' applicability are unambiguous and include only divorce and delinquency proceedings. The majority, in essence, creates a judicial exception with regard to the applicability of the Acts. The creation of a judicial exception such as the one urged by appellees and created by the majority is inappropriate where the Acts are clear and unambiguous. I firmly believe the very language of the Acts dictates a finding that they unquestionably apply to this nonconsentual adoption hearing.
It is apparent from the express language and the legislative history of the I.C.W.A. the concept of an Indian family also includes extended family members  aunts, uncles, grandparents, nieces, nephews, sisters or brothers-in-law, stepparents and first or second cousins. 25 U.S.C. § 1903(2); H.R.Rep. No. 1386, 95th Cong., 2d Sess. 20 (1977). Hence, D.'s Indian family consists of other persons than her nuclear family which includes her natural mother and father. The record reflects that D. lived for a period of time with her natural father and her paternal, Indian grandparents after the divorce. The termination of appellant's parental rights effectually severs D.'s relationship with her extended family as well as her biological father. The overall intent of the I.C.W.A. is to protect Indian families, which I believe includes the protection of extended family members in the coverage of the Acts.
Even if I were to find the application of the Acts were ambiguous, I still would disagree with the Court's disposition, because the primary rule of construction of *1391 Indian law is ambiguous provisions are to be interpreted for the benefit of Indians. Ahboah v. Housing Authority of the Kiowa Tribe, 660 P.2d 625, 631 (Okla. 1983). Accordingly, Congressional intent "to prevent the separation of Indian children from family and tribal heritage" is not to be lightly observed. Matter of Appeal in Pima County, 130 Ariz. 202, 635 P.2d 187, 188 (Ct.App. 1981). Today's ruling creating a judicial exception only serves to militate against the minimum federal standards designed to protect the Indian child, family and tribe in involuntary proceedings where the appellant Indian father's parental rights are terminated.
I would find the hearing determining Dewana eligible for adoption without appellant's consent is clearly within the ambit of the statutory definition of a child custody proceeding.
I am authorized to state that Justices LAVENDER, OPALA and KAUGER join me in this dissenting opinion.
NOTES
[1] That the adoptive mother-appellee is one-fourth Cherokee is of no legal significance to these proceedings.
[2] 25 U.S.C. §§ 1901-1963.
[3] 10 O.S.Supp. 1984 §§ 40-40.9.
[4] 25 U.S.C. § 1901(4).
[5] 25 U.S.C. § 1902.
[6] 25 U.S.C. § 1915(a).
[7] Supra note 3.
[8] 10 O.S.Supp. 1984 § 40.1.
[9] 10 O.S.Supp. 1984 § 40.3.
[10] 25 U.S.C. § 1912(a).
[11] 25 U.S. 1912(a) sets out requirements of notice.
[12] Crites v. City of Miami, 80 Okl. 50, 193 P. 984 (Okl. 1920).