32 Kan.App. 2d 448 (2004)
83 P.3d 1264
IN THE INTEREST OF J.J.G., DOB: 01/15/91.
No. 89,841.
Court of Appeals of Kansas.
Opinion filed February 13, 2004.
Anita Settle Kemp, of Wichita, for appellant natural father.
Larry S. Vernon, of Kansas Department of Social and Rehabilitation Services, of Wichita, for appellee.
*449 Before GREENE, P.J., ELLIOTT, J., and KNUDSON, S.J.
GREENE, J.:
The natural non-Indian father of J.J.G. appeals the trial court's decision to terminate his parental rights, alleging noncompliance with the Indian Child Welfare Act (ICWA) and insufficiency of evidence. We affirm.

Factual and Procedural Overview
J.J.G. was born January 15, 1991, to her Indian mother, a member of the Crow Tribe, and her non-Indian father. Father moved to Kansas in 1996 with the child after learning that mother had filed sexual abuse reports against him in Montana, leaving mother suffering from a stroke and chronic alcoholism. In February 2001, J.J.G. was placed in the Wichita Children's Home after she herself made allegations of sexual abuse against her father. Father denied the allegations.
On March 5, 2001, a child in need of care (CINC) petition was filed for J.J.G. based on the allegations of sexual abuse. At a temporary custody hearing, the court noted that ICWA might apply and required notice to mother. The State sent the requisite notice to mother and copied the director of social services for the Crow Tribe. On April 5, 2001, an attorney for the Crow Tribe of Montana entered his appearance on behalf of the Tribe, intervening in the custody proceedings. The attorney participated in pretrial conferences by phone and consistently indicated the Tribe's interest but asked the State to proceed with the matter.
In October 2001, father was convicted of one count of rape and five counts of sexual exploitation of a child (J.J.G.) and sentenced to 155 months' imprisonment. In December 2001, J.J.G. was adjudicated to be a child in need of care and ordered to remain in an out-of-home placement.
At an April 2002 review hearing, mother provided to the court a certificate of achievement showing that she had completed positive Indian parenting classes. The court found that mother was receiving services through the Crow Tribe, but that the Tribe had not sought to exercise jurisdiction over J.J.G. The court also received an authorization from the Crow Tribe licensing mother's maternal half-sister and brother-in-law for the care of J.J.G. The *450 permanency plan included placement consistent with the Tribe's license and with the intent that the child be reintegrated with her Indian mother.
On May 31, 2002, the State filed a motion to terminate father's parental rights, alleging father was unfit because of his criminal convictions and imprisonment. On the same date the court conducted a review hearing and the Tribe's attorney, mother, and a tribal representative participated by phone. During the hearing the court advised the parties of the filing of the State's motion to terminate father's parental rights, and further proceedings on that motion were scheduled. Notwithstanding tribal participation in this scheduling, notice of the termination hearing was also sent to the Tribe's attorney by registered mail, restricted delivery, and the record reflects receipt of same by the attorney.
After an evidentiary hearing on August 16, 2002, the court terminated the parental rights of father, concluding inter alia that father engaged in behavior that was cruel and abusive to the minor child, that he failed to adjust his circumstances, that he failed to maintain visitation with the child, and that he was unfit now and for the foreseeable future. The Tribe did not appear or participate in the hearing. Father timely appeals.

To What Extent Did ICWA Apply, and Was There Compliance with its Applicable Requirements?
Father first claims that the trial court erred in failing to comply with specific requirements of ICWA, including: (i) notice requirements; (ii) the requirement for parental termination to be supported by qualified expert witnesses; and (iii) the requirement for a specific evidentiary finding beyond reasonable doubt.
We acknowledge at the outset that ICWA initially applied to these proceedings because J.J.G. was an "Indian child" and parental termination proceedings are expressly defined as "child custody proceedings" under ICWA, 25 U.S.C. § 1903 (4) and (1)(ii) (2000), respectively. Father was a "parent" as defined in ICWA, 25 U.S.C. § 1903(9). Moreover, our court has previously held that a non-Indian father has standing to seek application of ICWA. In re H.D., 11 Kan. App. 2d 531, 532, 729 P.2d 1234 (1986). Other courts have *451 agreed. See, e.g., K.N. v. State, 856 P.2d 468, 474 n. 8 (Alaska 1993).
With regard to the notice issue, father apparently claims that the notice of the termination hearing technically failed to meet the requirement for notice to the Tribe. ICWA states:
"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." 25 U.S.C. § 1912(a) (2000).
The record shows that the Crow Tribe of Montana, through its attorney, was already a participating party in custody proceedings for J.J.G. long before the termination proceeding started and was present by phone when the scheduling on the parental termination proceeding was addressed. Moreover, the formal notice of the termination hearing was received by the Tribe's attorney in person and the postal receipt card bearing his signature was returned to the State. Even if there had been some technical non-compliance in mailing formal notice of the termination proceeding, the Tribe's actual participation in all custody proceedings regarding J.J.G., including scheduling for the termination proceedings, renders father's notice argument of no legal consequence. Under the unique facts of this case, literal compliance with ICWA's required notice to the Tribe for termination of parental rights of a non-Indian parent was unnecessary because there was substantial compliance with the requirements and the Tribe was already participating through its counsel in related custody proceedings.
Father's remaining claims of noncompliance with ICWA are based on its technical evidentiary requirements, including a provision requiring parental termination to be "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). The parties concede that this requirement was not met, since the termination hearing *452 included no testimony of "qualified expert witnesses," and we also note that the court did not make the required finding.
The State argues that although father may initially have standing to argue application of ICWA, its technical evidentiary requirements need not be applied under these circumstances since tribal interests were fully protected by its participation, by application of parallel requirements of Kansas law, and by a result that is consistent with stated intent in ICWA. We agree.
Congressional intent is expressly stated in ICWA as
"to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." 25 U.S.C. § 1902 (2000).
Our Supreme Court has previously stated that it is appropriate to consult the policies underlying ICWA and to hold ICWA inapplicable in circumstances where the application of ICWA provisions would not serve those policies. See In re Adoption of Baby Boy L., 231 Kan. 199, 205-06, 643 P.2d 168 (1982). Baby Boy L. involved proceedings for the adoption of a child born out of wedlock to a non-Indian mother and an Indian father. Mother consented to the adoption on the day the child was born and prospective adoptive parents filed an adoption petition. The Kiowa Tribe of Oklahoma sought to intervene, and father and the Tribe sought transfer of the case to the tribal court. The trial court found ICWA inapplicable, denying the case transfer. The Supreme Court affirmed the trial court, holding that the overriding concern of Congress in enacting ICWA was the maintenance of the family and tribal relationships existing in Indian homes and to set minimum standards for the removal of Indian children from their existing Indian environment. Congress did not intend "to dictate that an illegitimate infant who has never been a member of an Indian home or culture, and probably never would be, should be removed from its primary cultural heritage and placed in an Indian environment over the express objections of its non-Indian mother." 231 Kan. at 206. The court further stated ICWA "could have been more *453 clearly and precisely drawn" but to apply ICWA under those circumstances would violate the policy and intent of Congress rather than uphold them. 231 Kan. at 206.
Other state courts have recognized the importance of applying or refusing to apply ICWA consistent with congressional intent. The Oklahoma Supreme Court refused to apply ICWA in similar circumstances, basing its decision on the underlying purpose of ICWAprevention of removal of Indian children from an existing Indian family situation and the resultant breakup of the Indian family. In re Adoption of D.M.J., 741 P.2d 1386 (Okla. 1985). The court stated:
"[T]he ICWA applies only in those situations where Indian children are being removed from existing Indian family environments. Under the facts of this case where the Indian child since 1976 has been in the custody of her non-Indian mother, where the child is not being removed from the custody of an Indian parent, and is not being removed from an Indian environment, the ICWA does not apply." 741 P.2d at 1389.
Here, the termination of father's parental rights would not cause J.J.G. to be removed from custody of an Indian parent or from her extended Indian family. The record shows that the permanency plan was made for placement of J.J.G. with her maternal half-sister and brother-in-law in Montana with the ultimate goal of integrating J.J.G. into the home of her Indian mother. Under the unique facts of this case, literal compliance with ICWA's evidentiary requirement that parental termination to be "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," was unnecessary because the Tribe elected not to challenge the termination of parental rights, and termination of the non-Indian parent's rights was consistent with reintegration of the child with his or her native heritage. We reject father's claims of error in this regard.

Was the Termination of Parental Rights Supported by Substantial Competent Evidence?
*454 The standard of review in a termination of parental rights is whether substantial competent evidence supports the trial court's findings. The appellate court does not reweigh the evidence or pass upon the credibility of witnesses, and the evidence is reviewed in the light most favorable to the party prevailing below. Although the State has the burden to prove parental unfitness by clear and convincing evidence before the trial court, that standard does not affect the appellate court's scope of review. See In re S.M.Q., 247 Kan. 231, 234, 240, 796 P.2d 543 (1990).
The Kansas Code for the Care of Children provides that the court may terminate parental rights when the court finds by clear and convincing evidence that a parent is unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future, K.S.A. 2003 Supp. 38-1583(a). The statute lists nonexclusive factors the court shall consider in determining if severing parental rights is in the best interest of the child. K.S.A. 2003 Supp. 38-1583(b). While proof of any one of these statutory grounds may be sufficient to terminate parental rights, the court should consider all applicable factors, giving primary consideration to the physical, mental, or emotional condition and needs of the child. K.S.A. 2003 Supp. 38-1583(e).
The trial court found father to be unfit by reason of conduct or condition which rendered him unable to care properly for J.J.G. and such conduct or condition was unlikely to change in the foreseeable future. In making this determination, the court considered the following statutory factors under K.S.A. 2003 Supp. 38-1583: (b)(2)conduct toward the child of physically, emotionally, or sexually cruel or abusive nature; (b)(4)physical, mental or emotional neglect of the child; (b)(5)conviction of a felony and imprisonment; (b)(7)inability to rehabilitate the family through reasonable efforts of appropriate public or private child care agencies; (b)(8)lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child; (c)(1)failure to assure care of the child in the parental home when able to do so; (c)(2)failure to maintain regular visitation, contact, or communication with the child; and (c)(3)failure *455 to carry out a reasonable plan approved by the court directed to the reintegration of the child into the parental home.
Father complains that the trial court did not consider as a mitigating factor that he has been incarcerated and was unable to attend parenting classes or to maintain visitation. Moreover he notes that his conviction is on appeal and that these mitigating circumstances merited "different standards," citing In re Adoption of F.A.R., 242 Kan. 231, 236, 747 P.2d 145 (1987).
We agree with the trial court, however, that father's convictions do not require affirmance on appeal in order to serve as presumptive proof of unfitness. In re M.E.B., 29 Kan. App. 2d 687, 29 P.3d 471 (2001). Father's multiple convictions for rape and sexual exploitation of his own daughter are presumptive evidence that he is unfit for parenthood. K.S.A. 38-1585(a)(2). Moreover, even if incarceration mitigated father's parent education or visitation, we conclude that termination of father's rights was justified for numerous other reasons that are supported by substantial competent evidence.
Affirmed.