NOT DESIGNATED FOR PUBLICATION

No. 126,320

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.R.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Submitted without oral argument. Opinion filed March 8, 2024. Affirmed.

*Dennis J. Stanchik*, of Shawnee, for appellant natural mother.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Mother appeals a Johnson County District Court decision terminating her parental rights. She does not challenge the underlying determination by the court that she was unfit. Rather, she challenges the sufficiency of the evidence upon which the district court determined that her unfitness was unlikely to change in the foreseeable future. M.R., who was 15 months old at the outset of this case, was approaching 5 years of age at the time of the termination hearing. Given the objective lack of progress by the mother after 40 months of court involvement, and in light of the court's obligation to view the "foreseeable future" from the time perspective of the child, we find that clear and convincing evidence supports the district court's determination that mother's unfitness was unlikely to change in the foreseeable future. We affirm the decision of the district court.

1

M.R. was 15 months old when this child in need of care (CINC) case was filed. Mother was in jail for felony possession of methamphetamine and child endangerment. M.R. was living with his maternal grandmother (Grandmother), along with his two older sisters who had lived with Grandmother since 2017. According to the State, the Kansas Department for Children and Families (DCF) had been involved several times with M.R.'s older sisters. Grandmother had health issues and, while she was able to care for the older sisters, she was unable to care for M.R. The CINC allegations were not challenged by Mother. The district court found M.R. to be a child in need of care pursuant to K.S.A. 38-2202(d)(1) (child is without adequate parental care, control, or subsistence) and K.S.A. 38-2202[d][2]) (child was without the care or control necessary for his physical, mental, or emotional health).

M.R. was put in DCF custody and placed with foster parents. A six-month reintegration plan was instituted as the initial permanency plan. M.R.'s father was incarcerated in Missouri, so Mother was the sole option for reintegration. The reintegration plan was extended multiple times after the expiration of the initial six-month period, but in July 2022, the State filed a motion to terminate Mother's parental rights. The matter was heard during a two-day termination hearing in December 2022. Witnesses included multiple Kaw Valley Center (KVC) case managers assigned to oversee or assist in overseeing M.R.'s case, Grandmother, and Mother.

The district court issued a written memorandum decision, specifically detailing its factual findings and legal conclusions. The court found clear and convincing evidence Mother was unfit based upon three statutory factors in K.S.A. 38-2269.

*K.S.A. 38-2269(b)(3)—Use of intoxicating liquors or narcotic or dangerous drugs*

The district court found clear and convincing evidence Mother was "unfit by reason of conduct or condition which renders her unable to care properly for the child," citing Mother's use of drugs which rendered her unable to care for M.R.'s physical, mental, or emotional needs. The court noted that Mother continued to use methamphetamine "throughout the pendency of this case." Mother admitted using methamphetamine in May 2020, and she had positive hair follicle tests in August 2020 and June 2022. The court noted that Mother would submit to urinalysis testing (UAs) when she knew she would be clean but would not appear for extended periods of time when she was using drugs. For example, in the months preceding her positive hair follicle test on June 30, 2022, Mother only submitted to UAs in January 2022. She failed to show for tests in November and December of 2021 and February, March, April, and May of 2022 and then had a positive hair follicle test in June 2022. The court found Mother "exhibited a pattern of minimizing the seriousness of her drug addiction through her deceitful actions in avoiding UA testing and disappearing to unknown locations for extended periods."

*K.S.A. 38-2269(b)(8)—Lack of effort to adjust circumstances, conduct, or conditions*

Although the district court noted that although Mother had done a good job regarding employment and transportation, it found the evidence reflected a lack of effort on Mother's part to adjust her circumstances to meet M.R.'s needs. In particular, she had not secured stable housing, had not been able to maintain sobriety, and had not progressed in her visits with M.R. The court noted Mother struggled to meet her own needs and had not made changes to address M.R.'s needs. Mother's failure to maintain her sobriety and appear for scheduled UAs prohibited her from increasing visitation time with M.R. The longest visitation time Mother achieved at any time was only four hours of supervised visitation at Grandmother's house. At the time of termination, Mother's

3

supervised visitation had been reduced to the level where it started at the outset of the case—1 1/2 hours per week.

*K.S.A. 38-2269(c)(3)—Failure to carry out court-approved reintegration plan*

Finally, the district court found clear and convincing evidence Mother failed to carry out the reasonable court-ordered reintegration plan. It found Mother unfit because she "failed to complete significant reintegration tasks, including maintaining regular visitation with [M.R.], taking her UAs, maintaining stable housing, and maintaining sobriety by ceasing her use of methamphetamine."

Considering the 40-month life of the case, the lack of progress by Mother and applying a child's view of time, the district court concluded that Mother's unfitness was unlikely to change in the foreseeable future and it was in M.R.'s best interests to terminate Mother's parental rights.

ANALYSIS

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). The appellate court reviews the trial court's decision to terminate parental rights by considering "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," that a parent's rights should be terminated. 286 Kan. at 705 (applying standard of review in child in need of care determination); *In re K.H.*, 56 Kan. App. 2d 1135, 1139, 444 P.3d 354 (2017) (applying standard in *In re B.D.-Y.* to termination of parental rights). In reviewing the trial court's decision to terminate, this court "does not weigh conflicting evidence, pass on the

4

credibility of witnesses, or redetermine questions of fact." *In re K.H.*, 56 Kan. App. 2d at 1139. The party asserting an abuse of discretion bears the burden of proving the district court abused its discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

K.S.A. 38-2269(b)-(e) lists nonexclusive factors the district court may rely on to determine a parent is unfit. The existence of any single factor may be sufficient to establish grounds for termination of parental rights. K.S.A. 38-2269(f). Termination requires "clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." K.S.A. 38-2269(a). Courts liberally construe the Revised Kansas Code for Care of Children to "acknowledge that the time perception of a child differs from that of an adult and to dispose of all proceedings under this code without unnecessary delay." K.S.A. 38-2201(b)(4). The foreseeable future is examined from the child's perspective because children have a different perception of time than adults, and a child has a right to permanency within a time frame reasonable to them. *In re E.L.*, 61 Kan. App. 2d 311, 328, 502 P.3d 1049 (2021).

In assessing whether a parent's unfitness is "'unlikely to change in the foreseeable future,'" the district court may look to a parent's past conduct as an indication of future conduct. 61 Kan. App. 2d at 328. Based on Mother's historical performance over the course of 40 months, it was reasonable for the district court to look to that behavior as an indicator of her future conduct. The district court's written journal entry details the historical failures of Mother throughout the life of the case—multiple relapses, repeated failures to submit to drug testing as required by the reintegration plan, lack of effort to take the necessary steps to actively increase her time with M.R., and the failure to obtain suitable housing.

The district court's unfitness findings hinge largely on Mother's failure to address her drug issues, as that plays a central role in the court's analysis of each of the three statutory factors identified. And as noted at the outset, Mother does not challenge the sufficiency of the evidence supporting the findings she was unfit due to her drug use, her failure to adhere to a reasonable reintegration plan, or her failure to adjust her circumstances and conduct to meet M.R.'s needs. On appeal, Mother argues only that there is not clear and convincing evidence that her unfitness is unlikely to change in the foreseeable future.

In her argument, Mother naturally focuses on her positive efforts, many of which were recognized by the district court. She contends the evidence shows her ability to maintain employment, pay bills, maintain her car and health insurance, complete a substance abuse program, seek an apartment, and address her sobriety. Mother admits she "faced continuing sporadic difficulties with substance abuse" and relapsed three times during this case. But she asserts the court erred in finding her conduct or conditions were unlikely to change for the foreseeable future because she was sober at the time of the termination hearing and had not used drugs since April 2022. Mother's assertion of a lengthy period of sobriety is inconsistent with other evidence in the record, and it is evident given the district court's ruling, finding Mother's testimony less credible than the KVC workers' statements.

Although Mother correctly notes that she succeeded in some areas, there is clear and convincing evidence that Mother failed to maintain regular visits with M.R., was unable to progress in her visits with M.R., did not have stable housing by the time of the termination hearing, did not remain sober, did not submit UAs, did not follow the recommendations of her second drug and alcohol assessment, and did not maintain regular contact with KVC. The district court found Mother's failures in carrying out the reintegration plan outweighed the successes, and Mother requests that we reweigh the same evidence evaluated by the district court. We do not reweigh conflicting evidence or

6

reassess the credibility of witnesses; instead, we rely on the fact-finder—who was present to observe the witnesses' demeanor and hear their testimony—for those judgments. *In re D.J.B.*, No. 122,333, 2020 WL 4032849, at *4 (Kan. App. 2020) (unpublished opinion); see *In re B.D.-Y.*, 286 Kan. at 705.

Contrary to Mother's assertions concerning sobriety, the evidence shows Mother was unable to maintain or demonstrate her sobriety throughout this case, including in the months preceding the termination hearing. Although Mother contends that she had not used drugs since April 2022, evidence was presented that Mother sent a text to the KVC case manager in September 2022 and admitted she had used marijuana and explained that was the reason she had not been in contact with KVC for several weeks. Mother's disappearance was consistent with Grandmother's testimony that, throughout this case, Mother would leave home for up to two weeks with no notice of how long she would be gone or where she was going, and she would miss her UAs during her absences. Mother's disappearances were also consistent with the district court's observation of a pattern of behavior by Mother of taking UAs when she was not using drugs, then disappearing and avoiding UAs when she might test positive for drugs.

KVC witnesses testified they told Mother that a missed UA is counted as a positive test for drugs and that a positive test would prevent her from increasing visitation time with M.R. Although Mother denied KVC told her these things, Mother acknowledged that she understood the importance of providing UAs. She understood that it was her responsibility to show she was sober through the UAs, and she continuously failed to alter her behavior and comply with that reintegration plan requirement. Thus, the evidence, viewed in the light most favorable to the State, showed that Mother continuously skirted the UA requirement, even though she was aware it negatively affected her visitation time with M.R.

Even though Mother's parenting behavior was appropriate during visits with M.R., the visits negatively affected M.R., who exhibited behavioral issues before and after visits and when Mother failed to show for visits. The testimony from KVC showed mother missed some visitation visits with M.R. without notice, and it was not uncommon for Mother to sleep through her visitation time, leaving Grandmother to visit with M.R.

On the housing front, Mother resided with Grandmother over the life of this case despite an admitted "rocky relationship" between the two. Over the course of the case, Grandmother had given multiple 30-day notices for Mother to leave the residence. As of the time of the termination hearing, Mother had not established a residence of her own, and Grandmother had recently obtained an eviction order to remove Mother from her residence. Forty months into the reintegration plan, and even with knowledge of the eviction order, Mother had simply not obtained any alternate housing.

Based primarily on her own testimony, Mother argues her visits with M.R. were consistently attended and that they were appropriate. But there is contrary evidence in the record. When viewing the evidence in the light most favorable to the State, it shows that Mother missed visits with M.R. and at other times slept during the visitation times. Mother failed to rectify these shortcomings even after being granted multiple extensions of her initial six-month reintegration plan. Mother had no unsupervised time with M.R. throughout the three-year history of this case, and her visitation time never exceeded four hours. Considering Mother's lack of meaningful progress in addressing her drug issues, her failure to simply submit to UAs in order to increase her visitation time with M.R., as well as her failure to secure stable housing over a 40-month period, support the conclusion, by clear and convincing evidence, that Mother's behavior and level of effort toward changing her conduct or condition was unlikely to change in the foreseeable future.

Mother argues the fact that her failure to complete her "reintegration plan may be remedied by continued sobriety." But that describes the very same circumstance she faced in 2019 when M.R. was 15 months old. As noted by the district court, "'these cases must be judged mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time.'" *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008); see also *In re C.B.*, 34 Kan. App. 2d 317, 328, 117 P.3d 888 (2005) (Mother continued to use methamphetamine and failed to submit UA samples, child was in State custody for 17 months of her 23 1/2-month life).

As explained above, the evidence, viewed in the light most favorable to the State, shows that Mother was given more than three years to carry out a six-month reintegration plan, and the record is devoid of evidence showing any meaningful change in her compliance with that plan. Mother had ample opportunity to demonstrate her sobriety but failed to take the necessary steps to attain it. See *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019) (finding the child's young age of particular importance when considering the child's perception of time).

Mother's behavior following the filing of the termination motion is perhaps most telling in evaluating the likelihood of change in the foreseeable future. In the months leading up to the termination hearing, Mother missed several weeks in a row of scheduled visits, slept through other visits, and relapsed by using marijuana. She missed two UA's in December 2022 and did not arrange any visitation with M.R. for that month. And because she continued to miss scheduled UAs, her visitation time with M.R. had been reduced to a minimal level, just as it had been 40 months earlier. In addition, although she had ample notice of her eviction, Mother failed to demonstrate the ability to obtain alternative housing. Thus, even with the threat of termination at hand, Mother made no apparent additional effort and achieved no meaningful changes in her behavior. Based on the evidence in the record, viewed in the light most favorable to the State, we conclude a

9

rational fact-finder could find it highly probable, by clear and convincing evidence, that Mother's parental rights should be terminated. The termination of Mother's parental rights is affirmed.

Affirmed.